UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

XIAO DONG FU, *individually and on behalf
of all other employees similarly situated,*
and CHAU LAN NG,

                                    Plaintiffs,

                    v.

RED ROSE NAIL SALON INC. d/b/a RED
ROSE NAIL & SPA, WEN CHEN, YING
ZHOU, and JOHN DOES and JANE DOES
#1-10,

                                    Defendants.

------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  March 13, 2017
```

15 Civ. 7465 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Xiao Dong Fu and Chau Lan Ng bring this employment action against Defendants Red Rose Nail Salon Inc. ("Red Rose"), Wen Chen, Ying Zhou, and affiliated John and Jane Does, alleging that Defendants have failed, *inter alia,* to pay Plaintiffs required minimum and overtime wages in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 650-665.  Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56(a) on the grounds that Red Rose is not a qualifying enterprise under the FLSA and therefore is not subject to its provisions.  Defendants have also moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to plead plausibly an FLSA claim.  For the reasons set forth below, Defendants' motions for summary judgment and to dismiss are denied.

## BACKGROUND[1]

### A.  Local Rule 56.1 Requirements

Before turning to the facts of this case, a word about summary judgment practice in this District is in order:  Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the movant relies, together with citation to the admissible record evidence supporting each such fact.  *See* Local Rule 56.1(a), (d); *see also Giannullo* v. *City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003).  The Local Rule "further puts litigants on notice that 'failure to submit such a statement may constitute grounds for denial of the motion.'"  *Suares* v. *Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015) (summary order) (quoting Local Rule 56.1(a)).  What is more, this Court's Individual Rule 5.C reminds parties that compliance with Local Rule 56.1 is required.

Defendants have flouted the Court's Local and Individual Rules in moving for summary judgment without a Local Rule 56.1 statement.  The Court is thus authorized to, and chooses to, deny their motion for summary judgment on this basis.  *See MSF Holding Ltd.* v. *Fiduciary Tr. Co. Int'l*, 435 F.

---

[1]    For convenience, the Complaint is referred to as "Compl." (Dkt. #1); the Answer as "Ans." (Dkt. #7); Defendants' moving brief as "Def. Br." (Dkt. #17); the declaration in support of Defendants' motion for summary judgment and to dismiss as "Fredericks Decl." (Dkt. #18); Plaintiffs' opposition brief as "Pl. Opp." (Dkt. #20); the affirmation in opposition to Plaintiffs' opposition as "Brown Aff." (Dkt. #19); Plaintiff Chau Lan Ng's declaration as "Ng Decl." (Dkt. #19, Ex. 5 at 2); and Plaintiff Xiao Dong Fu's declaration as "Fu Decl." (Dkt. #19, Ex. 5 at 5).  Defendants filed no reply brief.

Supp. 2d 285, 304 (S.D.N.Y. 2006) (denying "[the] defendant's cross-motion [for summary judgment] on the ground that it has not complied with the requirements of Local Rule 56.1"); *Searight* v. *Doherty Enters., Inc.*, No. 02 Civ. 0604 (SJF), 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005) (denying summary judgment motion where the defendant "failed to submit the required 56.1 statement [because] the Court is unable to adequately assess whether there exist any genuine issues of material fact").

Of course, the Court retains "broad discretion … to overlook a party's failure to comply with local court rules." *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Even were the Court to exercise this discretion, however, after having "conduct[ed] an assiduous review of the record," *id.*, the Court would nonetheless deny Defendants' motion for summary judgment for the independent reasons described *infra*.

## B.    Factual Background[2]

Plaintiffs Fu and Ng, residents of Queens, New York, were employed as nail technicians at Red Rose, a New York-incorporated nail salon and beauty spa located in Manhattan. (Compl. ¶¶ 8-9, 32-34; Ans. ¶¶ 5-8, 34; Fu Decl. ¶¶ 1-2; Ng Decl. ¶¶ 1-2). Red Rose is owned and managed by Defendants Chen

---

[2]    Because there is no statement of undisputed facts in connection with this summary judgment motion, the Court relies on its review of the record submitted and, as necessary, on the Complaint and Answer, noting what remains an allegation unsupported by record evidence.

and Zhou.  (Compl. ¶¶ 10-11; Ans. ¶¶ 10-11; Fredericks Decl., Ex. 1 at 7 (Red

Rose's 2014-15 Form 1120, Schedule G, Voting Stock Ownership)).[3]

Fu was employed at Red Rose from about May 2007 to July 2015, and

Ng was employed there from about December 2005 to July 2015.  (Fu Decl.

¶ 2; Ng Decl. ¶ 2).  The Complaint alleges that Fu worked the following

schedule:  From May 2007 through September 2008, she worked about 52 to

55 hours per week, comprising shifts on Tuesdays through Fridays from 11:00

a.m. to 9:30 p.m., and occasionally to 10:00 p.m.; and on Sundays from 11:00

a.m. to 9:00 p.m., and occasionally to 9:30 p.m.  (Compl. ¶ 36).  During this

period, Fu was off twice a week, on Mondays and Saturdays.  (*Id.*).  Then from

October 2008 through July 2015, Fu worked about 54 to 56 hours per week,

comprising shifts on Tuesdays, Wednesdays, Fridays, and Saturdays, from

9:00 a.m. to 8:00 p.m., and occasionally to 8:30 p.m.; and on Sundays from

10:00 a.m. to 8:00 p.m., and occasionally to 8:30 p.m.  (*Id.* at ¶ 37).  During

this period, Fu was off twice a week, on Mondays and Thursdays.  (*Id.*).

Overall, Fu "was frequently not allowed to take a full 30 minute uninterrupted

lunch break during her shift."  (*Id.* at ¶ 40).  The Complaint further alleges that

during her employment, Fu was paid a fixed daily rate, irrespective of the

number of hours worked each day: $65 per day from May 2007 to May 2009;

$70 per day from June 2009 to May 2011; and $75 per day from June 2011 to

July 2015.  (*Id.* at ¶ 38).

---

[3]     "Defendants John Does and Jane Does #1-10 are as-yet unidentified owners, officers,
shareholders, and managers of Red Rose Nail Salon Inc."  (Compl. ¶ 12).

Ng was added as a Plaintiff on September 22, 2015. (Dkt. #5). No amended complaint was subsequently filed, and the Court's primary source of information about Ng's work schedule is her declaration in opposition to Defendants' motions. (Ng Decl. ¶¶ 2, 6). There, Ng represents the period of time she worked at Red Rose (December 2005 to July 2015) and her daily wage ($55 to $60). (*Id.*). There is no specific information in the Complaint, or in the record presented to the Court in connection with the instant motions, that reflects the number of hours Ng worked per day or week.

Plaintiffs sue on behalf of themselves and those similarly situated, seeking, *inter alia*, unpaid minimum wages, overtime wages, and spread-of-hour wages under the FLSA (Compl. ¶¶ 52-64) and the NYLL (*id.* at ¶¶ 65-72).[4]

## C.    Procedural Background

Fu filed the Complaint on September 21, 2015; the following day, Ng consented to join her as a named plaintiff. (Dkt. #1, 5). Defendants filed their Answer on October 26, 2015. (Dkt. #7). After a January 7, 2016 Initial Pretrial Conference, the Court entered a Case Management Plan and Scheduling Order that, *inter alia*, set the deadline for the close of fact discovery as May 13, 2016. (Dkt. #11). After a May 19, 2016 Pretrial Conference, the parties attempted unsuccessfully to settle this matter and, on June 20, 2016, the Court granted Defendants leave to file a motion for summary judgment and also set forth a briefing schedule. (Dkt. #13-14).

---

[4]    The Complaint also asserts a cause of action for failure to provide certain notices and statements required under N.Y. Lab. Law §§ 190-199. (Comp. ¶¶ 73-81).

On August 2, 2016, Defendants filed their motions for summary judgment under Rule 56(a) and to dismiss the Complaint under Rule 12(b)(6), as well as a supporting brief, declaration, and exhibits.  (Dkt. #16-18).[5]  As noted, Defendants failed to file a Local Rule 56.1 statement.  On August 19, 2016, Plaintiffs filed an opposition brief,[6] affirmation, and exhibits.  (Dkt. #19-20).  Given the absence of a Local Rule 56.1 statement, Plaintiffs filed no Local Rule 56.1 counter-statement.  Although the Court's June 20, 2016 scheduling order had contemplated the filing of a reply brief, Defendants opted not to file one.[7]

## DISCUSSION

### A.    Motions for Summary Judgment Under Rule 56

Under Rule 56(a), summary judgment may be granted only if the record "show[s] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[8]  *See Celotex Corp.* v. *Catrett*, 477

---

[5]    Defendants' deadline for their motion and supporting materials was July 22, 2016. (Dkt. #14).  The docket indicates that Defendants' attempt to file their materials on that date was unsuccessful due to certain electronic docketing errors.  Thus, despite the proximate filing dates noted above for the moving and opposition briefs, Plaintiffs were in fact afforded the full period originally contemplated to file their opposition materials. (Dkt. #14, 18-20).

[6]    Plaintiffs' opposition brief contains an incorrect table of contents apparently imported from a different brief involving the FLSA's economic realities test.  (Pl. Opp. 2).

[7]    Upon the passage of this deadline, and in light of Defendants' prior electronic docketing issues, the Court confirmed Defendants' intention not to file a reply brief with their counsel of record.

[8]    The Court is aware that the 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  As of this past year, the Second Circuit continues to use both formulations.  *Compare, e.g., Smith* v. *Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016) ("The moving party bears the burden to demonstrate

U.S. 317, 322 (1986); *accord Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely at issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).  The movant may carry this burden by showing that the nonmovant has not produced sufficient evidence "to establish the existence of an element essential to [the nonmovant's] case, and on which [the nonmovant] will bear the burden of proof at trial."  *Id.* at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the nonmovant fails to "come forth with evidence sufficient to permit a reasonable juror to

---

the absence of any genuine issues of material fact."), *with, e.g., Harris* v. *Miller*, 818 F.3d 49, 54 (2d Cir. 2016) ("[W]e conclude that there are genuine disputes of material fact[.]").  Indeed, the Circuit sometimes uses the terms interchangeably within the same decision.  *Compare, e.g., Cross Commerce Media, Inc.* v. *Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) ("[T]here is a genuine dispute of material fact[.]"), *with, e.g., id.* at 168 ("We therefore think that [the nonmovant] has raised a genuine issue of material fact[.]").  The Court relies on the traditional phrasing in this Opinion.

return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the movant meets this burden, the nonmovant cannot rely on the "mere allegations or denials" contained in the pleadings, *Anderson*, 477 U.S. at 248, and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted). Instead, the nonmovant must "set forth specific facts showing a genuine issue for trial" using affidavits or other evidentiary materials. *Anderson*, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, a court "should not weigh evidence or assess the credibility of witnesses." *Hayes* v. *N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *United States* v. *Rem*, 38 F.3d 634, 644 (2d Cir. 1994)).

## B. Motions to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98,

104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan*, 584 F.3d at 88).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the

complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss).

## C. Defendants Are Not Entitled to Summary Judgment on Plaintiffs' FLSA Claims

Defendants have moved for summary judgment on a narrow, albeit dispositive, issue concerning their employees' coverage under the FLSA.  For the reasons set forth below, summary judgment is denied.

### 1. Applicable Law

The FLSA's minimum wage and overtime requirements provide coverage to employees who are, in any workweek, (i) "engaged in commerce or in the production of goods for commerce," or (ii) "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a), 207(a)(1); *see Hernandez* v. *Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *20 (S.D.N.Y. June 9, 2016).  "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively."  *Jacobs* v. *N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam).  Defendants maintain that neither coverage scheme applies to their employees.

### 2. Individual Coverage Does Not Apply

It is undisputed that the individual coverage scheme is inapplicable here. Defendants argue that Plaintiffs were not "engaged in commerce or in the production of goods for commerce" because "Plaintiffs all worked in the

capacity of nail technicians in the borough of Manhattan, and as such …
cannot establish that their employment involved interstate activity related to
the FLSA claims[.]"  (Def. Br. 4).  Plaintiffs do not quarrel with this conclusion,
acknowledging that "[f]or the purposes of this motion Plaintiffs contend that
they were employed by [an] enterprise engaged in commerce, and thus invoke
enterprise coverage as a basis of federal jurisdiction."  (Pl. Opp. 10-11).

### 3.    A Genuine Issue of Material Fact Precludes Summary Judgment on Whether Enterprise Coverage Applies

Under the FLSA, an "enterprise engaged in commerce" is an enterprise
that, as relevant here: (i) "has employees handling, selling, or otherwise
working on goods or materials that have moved in or produced for commerce"
and (ii) "whose annual gross volume of sales made or business done is not less
than $500,000."  29 U.S.C. § 203(s)(1).

### a.    Red Rose Employees Handled Materials That Have Moved in Commerce

The enterprise coverage test's first requirement is "rarely difficult to
establish" because it requires showing only that the enterprise's "employees
have 'handled materials that have been moved in commerce.'"  *Jacobs*, 577
F.3d at 99 n.7 (alterations omitted) (quoting 29 U.S.C. § 203(s)(1)(A)(i)); *accord
Shu Lan Chen* v. *Gypsophila Nail & Spa Inc.*, No. 15 Civ. 2520 (JPO), 2015 WL
3473510, at *4 (S.D.N.Y. June 2, 2015).

Here, Defendants do not dispute that Red Rose employees handled
products that moved through channels of interstate commerce.  (*See* Def. Br. 4
("[E]ven if Defendants concede for purposes of this motion that [Red Rose]

qualifies as an enterprise under the first prong, Defendants do not meet the [second prong].”); *see also* Pl. Opp. 11 (“Defendants concede that they were an enterprise engaged in commerce.”)).  Thus, the Court deems the enterprise coverage test's first requirement satisfied.  As discussed next, however, the test's second requirement implicates a genuine issue of material fact.

> **b.      There Is a Genuine Issue of Material Fact Whether Red Rose's Annual Gross Sales Met the $500,000 Threshold**

> > **i.      Red Rose's Federal and State Corporate Tax Returns**

Defendants offer Red Rose's federal and state corporate income tax returns as proof that the company “never achieved an annual gross business volume approaching $500,000” and, therefore, that Red Rose is “not subject to the minimum wage and overtime provisions of the FLSA.”  (Def. Br. 4-5).  Red Rose's Form 1120 federal corporate income tax returns reflect annual gross sales of: (i) $272,081 for the period March 1, 2012, to February 28, 2013 (Fredericks Decl., Ex. A at 35); (ii) $317,933 for the period March 2, 2013, to February 28, 2014 (*id.* at 19); and (iii) $321,933 for the period March 1, 2014, to February 28, 2015 (*id.* at 2).

Red Rose's Form ST-100 New York State and Local Quarterly Sales and Use tax returns reflect quarterly gross sales ranging between $65,695 and $96,635 for each of the seven quarterly returns filed for the period December 1, 2013, to August 31, 2015.  (*See* Fredericks Decl., Ex. B at 81 ($76,276 in 4Q2013); *id.* at 77 ($93,506 in 1Q2014); *id.* at 73 ($87,555 in 2Q2014); *id.* at 69 ($75,177 in 3Q2014); *id.* at 65 ($65,695 in 4Q2014); *id.* at 61 ($96,635 in

1Q2015); *id.* at 57 ($94,701 in 2Q2015)).  Based on these returns, no consecutive four quarters total $500,000 or more in annual gross sales.

For Defendants, these federal and state tax filings definitively prove that Red Rose earned less than $500,000 in annual gross sales, exempting it from enterprise coverage.  Defendants thus contend that they are entitled to summary judgment because "Plaintiffs have not and cannot meet their burden of demonstrating that the FLSA's statutory coverage applies to Defendants." (Def. Br. 5).  As illustrated below, Defendants' arguments are flawed in both premise and conclusion.

### ii.   Enterprise Coverage as an Element of Plaintiffs' FLSA Claim

Both parties assume, without any discussion, that the enterprise coverage issue implicates the Court's jurisdiction.  (*See* Def. Br. 5 ("Plaintiffs bear the burden of establishing the jurisdictional prerequisite of either enterprise or individual coverage."); *see* Pl. Opp. 10-11 ("Plaintiffs … invoke enterprise coverage as a basis of federal jurisdiction.")).  The Court disagrees with this shared assumption and adopts instead the position — increasingly prevalent after the Supreme Court's 2006 decision in *Arbaugh* v. *Y&H Corp.*, 546 U.S. 500 (2006) — that "[t]he question of whether or not Defendants actually are an 'enterprise engaged in commerce' … is an issue that goes to the merits of Plaintiffs' claims rather than to the Court's subject matter jurisdiction."  *Monterossa* v. *Martinez Rest. Corp.*, No. 11 Civ. 3689 (JMF), 2012 WL 3890212, at *3 (S.D.N.Y. Sept. 7, 2012) (internal quotation marks and alterations omitted) (quoting *Velez* v. *Vassallo*, 203 F. Supp. 2d 312, 332

(S.D.N.Y. 2002)); *accord Jai Fu Chen* v. *New 9th Ave Pearl on Sushi Inc.*, No. 14
Civ. 580 (JPO), 2015 WL 3947560, at *3 (S.D.N.Y. June 29, 2015).

     As one court in this District observed, "[v]irtually all of the circuit courts
and those district courts in the Second Circuit that have explicitly considered
whether the FLSA's $500,000 requirement is jurisdictional agree that it is a
requirement that goes to the merits of a claim and is not jurisdictional." *Angel*
v. *Harvest C-Food Inc.*, No. 14 Civ. 6035 (SHS), 2015 WL 7288644, at *2
(S.D.N.Y. Nov. 16, 2015) (collecting cases). And those courts that consider it
jurisdictional "either pre-date *Arbaugh* or are perhaps best described as 'drive-
by jurisdictional rulings' that do not 'explicitly consider[ ] whether the dismissal
should be for lack of subject matter jurisdiction or for failure to state a claim.'"
*Id.* (quoting *Arbaugh*, 546 U.S. at 511) (collecting cases).

     This distinction is not merely a technical one. Indeed, it is critical to
Plaintiffs' defeat of summary judgment, making their silent acquiescence all the
more curious. Because enterprise coverage goes to the merits of Plaintiffs'
claims, and not to their basis for invoking jurisdiction, Plaintiffs need not
*establish* enterprise coverage — nor, more specifically, that Defendants earned
$500,000 or more in annual gross sales — in order to survive summary
judgment. That would be Plaintiffs' burden at trial. Rather, at this stage
Plaintiffs need only demonstrate that there is a genuine issue of material fact
regarding whether Defendants' annual gross sales were less than $500,000.
*See Monterossa*, 2012 WL 3890212, at *3. Relying on affidavits and other
evidentiary materials, Plaintiffs have successfully "set forth specific facts

showing [such] a genuine issue for trial," *Anderson*, 477 U.S. at 250, as demonstrated below.

### iii. Red Rose May Have Earned $500,000 or More in Annual Gross Sales

For starters, in determining whether the $500,000 threshold is met, "there is substantial precedent suggesting that tax returns are not dispositive and the veracity of those documents can be questioned by a Plaintiff [and likewise] substantial precedent suggesting that factors other than tax returns are relevant." *Jia Hu Qian* v. *Siew Foong Hui*, No. 11 Civ. 5584 (CM), 2013 WL 3009389, at *3 (S.D.N.Y. June 14, 2013) (alterations omitted) (collecting cases); *accord Shu Lan Chen*, 2015 WL 3473510, at *3 ("[S]everal courts in this circuit considering businesses' tax returns at the summary judgment stage have expressed skepticism about their reliability, especially where the returns are unauthenticated or where they conflict with other evidence."); *Monterossa*, 2012 WL 3890212, at *4 ("[T]here is good reason to be cautious in relying on Defendants' tax returns because ... the submitted returns are unsigned and unaccompanied by a statement or affidavit of the tax preparer.").

Plaintiffs have raised a genuine issue about the accuracy of Defendants' tax returns and, specifically, about whether Red Rose's stated gross sales underreported its actual sales.  For example, Red Rose reported $53,460 worth of salaries and wages in its 2014 federal corporate tax return.  (*See* Fredericks Decl., Ex. A at 2 (2014-15 Form 1120)).  Plaintiffs assert that this understates by more than half the actual salaries and wages paid.  In their sworn declarations, Plaintiffs attest that "[t]here were at all times between eight and

nine employees of Red Rose," all but one of whom was full-time, and that, based on their conversations with other employees, "all Red Rose nail technicians earned between $60 and $80 per day." (Ng Decl. ¶¶ 7-8; Fu Decl. ¶¶ 7-8). Plaintiffs note that assuming Defendants employed eight workers, working an average of five days per week, and earning $60 per day, this would total nearly $125,000 in annual salaries. "Thus, even the lowest possible estimate of total salaries is about 2.5 times the salaries that were reported." (Pl. Opp. 12).

Moreover, this estimate of salary and wage costs in 2014, coupled with Red Rose's lease amount of $210,000 for the same year (Brown Aff. ¶ 9; *id.,* Ex. 2 at 8 (Red Rose's 2014-19 Real Estate Lease)), totals about $335,000 in costs for 2014. As noted earlier, Red Rose's reported gross sales for 2014 was $321,933. (Fredericks Decl., Ex. A at 2 (2014-15 Form 1120)). Thus, Red Rose would have operated at a loss in 2014 if its reported income was correct, and this does not even account for other costs such as utilities and supplies. (*See* Pl. Opp. 12).

Plaintiffs also contend that the total sum of deposits into Red Rose's bank account at Abacus Federal Savings Bank from March 2014 through February 2015 exceeded reported revenues of $321,933 for the same period. (See Pl. Opp. 12; *see also* Fredericks Decl., Ex. A at 2). Plaintiffs represent that Red Rose's total deposits were about $360,000 for this period. (Brown Aff. ¶ 13). Defendants, having elected not to file a Local Rule 56.1 statement or reply brief, have not disputed this estimate. The Court has undertaken its own

16

optional "assiduous review of the record," *Holtz*, 258 F.3d at 73, and arrives at a slightly lower estimate for Red Rose's total deposits: about $337,000.[9]  (*See* Brown Aff., Ex. 3 at 5 (March 2014); *id.* at 8 (April 2014); *id.* at 11 (May 2014); *id.* at 14 (June 2014); *id.* at 17 (July 2014); *id.* at 18 (August 2014); *id.* at 24-26 (October 2014); *id.* at 29 (November 2014); *id.* at 30-32 (December 2014); *id.* at 35 (January 2015); *id.* at 36 (February 2015)).[10]  Still, it remains true that Red Rose's total deposits between March 2014 and February 2015 into this particular Abacus account exceeded the income Red Rose reported on its 2014 federal corporate tax return covering roughly the same period.

Finally, Plaintiffs also highlight "that the only funds that were deposited into the bank account c[a]me from credit card purchases" and "[t]here is not a single cash deposit made into Red Rose's bank account."  (Pl. Opp. 13).  This, despite the fact that "[a]pproximately thirty to forty percent of customers paid in cash [and] the remainder paid in credit card."  (Fu Decl. ¶ 5; Ng Decl. ¶ 5).

Plaintiffs conclude by urging the Court to adopt their explanation for these inaccuracies and discrepancies:  Defendants have underreported their

---

[9]     The Court's lower estimate is likely a result of the following:  First, Plaintiffs extrapolate the total deposit amounts for October and December based on entries for "the first fifteen days of" each month (Brown Aff. ¶ 12 nn.2-3), possibly because the statements for these two months, unlike for the others, contain no "account summary" entry reflecting a total deposit amount.  Having manually summed up the entries for each entire month in lieu of extrapolation, the Court arrives at total deposit estimates that are roughly $7,300 and $6,900 less than Plaintiffs' for October and December, respectively.  (*See* Brown Aff., Ex. 3 at 24-26 (October 2014); *id.* at 30-32 (December 2014)).  Moreover, Plaintiffs misstate the total deposit amount for November 2014 (*id.* at ¶ 12):  The correct amount is $23,723.02; the $31,860.39 figure that Plaintiffs rely upon is the total withdrawals, not deposits, for the month.  (*Id.*, Ex. 3 at 29).

[10]    Bank statements for September 2014 are missing from the record.  Plaintiffs estimate a September deposit amount based on an average of August and October deposits.

gross sales on their tax returns. (Pl. Opp. 13). Based on Plaintiffs' estimate of $360,046.48 in total deposits for the period March 2014 to February 2015, and their sworn affidavits' estimate that this credit card-based amount likely reflects only about 60-70% of total sales, Plaintiffs assert that "Red Rose had gross revenues from March 2014 and February 2015 of between $514,352.11 and $600,075.46,[11] well in excess of the $500,000 threshold." (Pl. Opp. 13; Brown Aff. ¶ 15).

Defendants have elected not to respond to these arguments, as earlier noted. Nevertheless, the Court does not necessarily draw the same conclusions as Plaintiffs about Defendants' finances. For example, Plaintiffs' declaration attests that 30-40% of *customers* paid in cash (*see* Fu Decl. ¶ 5; Ng Decl. ¶ 5), not that 30-40% of *total sales* were in cash. Thus, Plaintiffs' across-the-board 30-40% extrapolation from total credit card sales to arrive at the $514,000 to $600,000 range is potentially flawed; it may well be that cash was used by 30-40% of customers but more frequently on low-sum transactions, resulting in a disproportionally lower percentage of gross sales.

Moreover, there may be explanations that both account for the discrepancies highlighted by Plaintiffs and still remain consistent with Defendants' position that their annual sales remained below $500,000. Perhaps Defendants *did* operate at a loss or perhaps Plaintiffs' estimates of cash revenue are not credible. The Court need not (and cannot) resolve such

---

[11]     Plaintiffs' calculation is off by $2. Using Plaintiffs' total deposit estimate of $360,046.48, the upper range for estimated gross sales extrapolated based on credit card sales is $600,077.46.

questions at this time.  What is manifest is that Plaintiffs have set forth specific facts based on the record that raise a genuine question about whether Defendants' annual gross sales met or exceeded $500,000.  This genuine issue is material to — and, indeed, likely dispositive of — whether Defendants are subject to the FLSA based on the statute's enterprise coverage provision.  Accordingly, Defendants' motion for summary judgment must be denied.

### D.    Defendants' Motion to Dismiss Is Denied

Defendants move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.  (Dkt. #16; Def. Br. 6-7).  Defendants' motion is denied for three independent reasons.[12]

*First*, Defendants have again failed to comply with the Court's Individual Rules.  Individual Rule 4.A requires a pre-motion letter prior to moving to dismiss a complaint, and Defendants filed no such letter here.  Accordingly, their motion is denied for failure to comply with the Court's Individual Rules. *See Jones-Bartley* v. *McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 624 (S.D.N.Y. 2014) ("Because Defendant had failed to request a pre-motion conference before filing the motion, the Court … summarily denied the motion 'without prejudice for failure to follow the Court's Individual Practices.'").

*Second*, Defendants' motion is untimely under Rule 12(b)(6) because such a motion "must be made before pleading if a responsive pleading is

---

[12]    Defendants urge the Court to decline to exercise supplemental jurisdiction over Plaintiffs' NYLL claims if the Court dismisses Plaintiffs' FLSA claims.  (Def. Br. 8).  As the Court denies Defendants' motions for summary judgment and to dismiss, it likewise rejects Defendants' supplemental jurisdiction argument.

allowed." Fed. R. Civ. P. 12(b). "A motion to dismiss under Rule 12(b)(6) is

untimely" where the movant "previously filed an answer in this action."

*Niederland* v. *Chase*, No. 11 Civ. 6538 (RWS), 2012 WL 2402603, at *4

(S.D.N.Y. June 26, 2012) (internal quotation marks omitted) (quoting *Prince* v.

*Cablevision Sys. Corp.,* No. 04 Civ. 8151 (RWS), 2005 WL 1060373, at *3

(S.D.N.Y. May 6, 2005)). Here, Defendants' Rule 12(b)(6) motion to dismiss is

untimely because they have already filed an Answer.[13]

    *Third*, even were the Court to convert Defendants' post-answer, post-

discovery, Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary

judgment, Defendants' motion would fail. *See Williams* v. *City of N.Y.*, 121 F.

Supp. 3d 354, 377 (S.D.N.Y. 2015) (holding that the defendant "must do more

than challenge [the] [p]laintiff's factual pleadings" where the defendant had

filed a post-answer, post-discovery, Rule 12(b)(6) motion to dismiss, and

converting the motion into one for summary judgment). Defendants have not

supplied in the record, never mind pointed to, any factual materials to support

---

[13]    Ng was joined as a Plaintiff on September 22, 2015, over four weeks before Defendants filed their Answer on October 26, 2015. (*See* Dkt. #5, 7). The caption and text of Defendants' Answer, however, is pled with reference to Fu only, and not also Ng. Judging by the caption of Defendants' motions for summary judgment and to dismiss, which caption also neglects to reference Ng, the Court suspects that Defendants' omission in their Answer was an oversight. If it was deliberate, then the time for Defendants to answer or otherwise respond to the Complaint has lapsed. *See* Fed. R. Civ. P. 12(a)(1)(A). Defendants' instant Rule 12(b)(6) motion would therefore be untimely nonetheless. *See Tolliver* v. *Lilley*, No. 12 Civ. 971 (DAB) (KNF), 2014 WL 10447163, at *6 (S.D.N.Y. Oct. 24, 2014), *report and recommendation adopted sub nom. Tolliver* v. *Skinner*, No. 12 Civ. 971 (DAB), 2015 WL 5660440 (S.D.N.Y. Sept. 25, 2015) ("[A Rule 12] motion to dismiss … served after the time to answer the complaint expired and in the absence of a court order enlarging the time pursuant to Rule 6(b), is untimely." (citing 5C Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1361 (3d ed. 2004) ("Since the only time limitation on Rule 12(b) motions is that they must be made 'before pleading,' Rule 12(a), which allows twenty[-one] days for filing responsive pleadings, normally controls the time limit on these motions."))).

dismissal or summary judgment against Plaintiffs on the merits of their minimum, overtime, and spread-of-hours wage claims.  Accordingly, Defendants' motion fails.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment and to dismiss are DENIED.  The Clerk of Court is directed to close Docket Entry 16.  The parties are hereby ORDERED to appear for a status conference on **April 4, 2017**, at **3:00 p.m.** in Courtroom 519 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.

SO ORDERED.

Dated:      March 13, 2017
            New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge